UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KATHY JOY KIRKENDALL, WESLEY
SNYDER, BARBARA CAYA, and BONNIE SETH,
on behalf of themselves and others
similarly situated,

                          Plaintiffs,

          -vs-                                                    07-CV-289-JTC

HALLIBURTON, INC., HALLIBURTON
RETIREMENT PLAN, and DRESSER
INDUSTRIES, INC. CONSOLIDATED
RETIREMENT PLAN,

                          Defendants.
_____

          By order of Chief United States District Judge William M. Skretny dated June 8,

2011 (Item 26), this matter has been reassigned to the undersigned for all further

proceedings.

          In this putative class action brought against the Halliburton Company, the

Halliburton Retirement Plan (the "Halliburton Plan"), and the Dresser Industries, Inc.

Consolidated Retirement Plan (the "DICON Plan" or the "Dresser Plan"), four employees

of the Dresser-Rand Company ("Dresser-Rand") seek redetermination of pension benefits,

compensatory damages, and declaratory relief on behalf of themselves and others similarly

situated pursuant to various provisions of the Employee Retirement Income Security Act

of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et seq*.  Defendants move pursuant to

Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings

dismissing the complaint, in its entirety and with prejudice, based on plaintiffs' failure to

exhaust the administrative procedures for processing pension benefit claims under the Plans.  For the reasons that follow, defendants' motion is granted.

## BACKGROUND

As alleged in the complaint (filed on May 1, 2007), Dresser-Rand was formed on or about January 1, 1987, pursuant to a partnership agreement between Dresser Industries and the Ingersoll Rand Company.  The four named plaintiffs are participants in the DICON Plan, an employer-sponsored pension benefit plan as defined in ERISA (Item 1, ¶¶ 11-13, 16).

On September 29, 1998, the Halliburton Company acquired Dresser Industries, and Halliburton became the sponsor of the DICON Plan (*id.* at ¶ 14).   In February 2000, Halliburton sold its interest in Dresser-Rand to Ingersoll-Rand, leaving Ingersoll Rand as the sole partner of Dresser-Rand (*id.*  at ¶ 18).  Plaintiffs allege that, "[f]ollowing the sale, the parties did not wind up the affairs of Dresser-Rand.  Rather, Dresser-Rand continued to operate the same business, under the same name, at the same locations, with the same employees performing the same jobs."  (*Id.* at ¶ 19).

On November 30, 2001, Halliburton's Chairman of the Board, President and Chief Executive Officer David Lesar executed a "Merger Document" merging the DICON Plan into the Halliburton Plan (Item 12, Exh. C).  The Merger Document expressly provided that:

> Contrary provisions of the [Halliburton] Plan notwithstanding, all of the provisions of the DICON Plan, as in effect on the Merger Date [December 31, 2001], shall remain in effect (unless and until amended) as a part of, and shall be incorporated into, the [Halliburton] Plan for the benefit of the "participants" in the DICON Plan as of the Merger Date . . . , who shall continue to be covered by such provisions to the exclusion of any other provisions of the [Halliburton] Plan.

2

(*Id.*, Exh. C, ¶ 3).

Plaintiffs allege that, "[c]ommencing in or about July, 2002, Halliburton has taken the position that sale of its interest in Dresser-Rand to Ingersoll had the effect of terminating the existence of Dresser-Rand, and thereby terminating the employment of all Dresser-Rand employees . . . , as of March 1, 2000" (Item 1, ¶ 21). Plaintiffs claim that as a result, the administrators of the Plan have been calculating pension benefits for retiring Dresser-Rand employees by using March 1, 2000 as the date of termination of employment, rather than the later actual termination dates, causing decreased benefits payable to putative class members (*id.* at ¶¶ 22-25).

The complaint sets forth the following four counts as legal basis for the relief sought in this action:

I.      Declaratory judgment with respect to the pension rights of plaintiffs (and the putative class), and the corresponding duties of defendants, based upon resolution of the "actual controversy" regarding "whether the sale of Halliburton's interest in Dresser-Rand had the effect of terminating the existence of Dresser-Rand and the employment of its employees" (*id.* at ¶¶ 34-35);

II.     Re-determination of class members' "past, present and future benefits . . . using the  actual date of their termination from employment by Dresser- Rand, and [payment of] the difference between the correctly determined benefit and any benefit they have received from the Plan, together with interest" (*id.* at ¶ 37);

III.    Breach of ERISA's "anti-cutback" provisions, §§ 204(g), 204(h), and 208, which prohibit amendments to pension plans having the effect of diminishing the accrued benefits of plan participants (*id.* at ¶¶ 39-40);

IV.    Breach of fiduciary duty (*id.* at ¶¶ 42-44).

Defendants filed an answer on July 23, 2007, asserting 28 affirmative defenses, including failure to exhaust the administrative claims procedures available under the Halliburton or DICON Plans  (Item 11, ¶ 47).  As set forth in the "Factual Averments" section of the answer:

> Defendants' records reflect that none of the Plaintiffs have asserted claims for benefits pursuant to either the Halliburton or DICON Plans' remedies for redress of claims that are denied in whole or part and, as a result, Defendants do not know what Plaintiffs mean by their allegation in Paragraph 21 of the Complaint that Halliburton has taken the position that sale of its interest in Dresser-Rand to Ingersoll had the effect of terminating the existence of Dresser-Rand, and thereby terminating the employment of all Dresser-Rand employees as of March 1, 2000.

(*Id.* at ¶ 21).  Attached to the answer as exhibits are the Halliburton Plan (Item 11, Exh. A); the DICON Plan (*id.*, Exh. B); the November 30, 2001 Merger Document (Item 12, Exh. C); and a copy of the "Claims Procedures" for the Halliburton Plan (*id.*, Exh. D).

On the same day the answer was filed, defendants filed the instant motion for judgment on the pleadings seeking dismissal of the complaint in its entirety, based on the following grounds:

1.    Plaintiffs' claim asserted in Count II for "redetermination" of benefits must be dismissed because plaintiffs have failed to allege or show that they pursued the claims procedures provided in the applicable Plan, or that they otherwise exhausted available administrative remedies, as they are required to do before bringing suit in federal court seeking a determination of benefits under an ERISA-regulated pension plan;

2.    Plaintiffs' breach of fiduciary duty claim is merely a "repackaging" of the claim for redetermination of pension benefits so as to circumvent the exhaustion requirement;

3.      Plaintiffs' claims under ERISA sections 204 and 208 fail because there was no actual amendment to the Plan, and because no benefits were reduced as a result of the merger;

4.      Plaintiffs' declaratory judgment claim cannot stand alone as a cause of action.

(*See* Item 13-2).

Each of these grounds is discussed in turn below.

## DISCUSSION

### A.      Judgment on the Pleadings

Defendants' motion was filed pursuant to Rule 12(c), which provides simply that "[a]fter the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." Fed R. Civ. P. 12(c).  In deciding a Rule 12(c) motion, courts apply the same standard utilized to determine a motion under Rule 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief can be granted, "accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999), *cert. denied*, 531 U.S. 1052 (2000); *see also Harrison v. Harlem Hosp.*, 364 Fed. Appx. 686, 688 (2d Cir. 2010), *cert. denied*, ___U.S.___, 131 S.Ct. 1018 (2011).  To survive a motion for judgment on the pleadings under this standard, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is considered to have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, ___U.S.___, 129 S.Ct.

1937, 1949 (2009).

> In deciding a motion for judgment on the pleadings, the court may consider
>
> the pleadings and exhibits attached thereto, statements or documents incorporated by reference in the pleadings, matters subject to judicial notice, and documents submitted by the moving party, so long as such documents either are in the possession of the party opposing the motion or were relied upon by that party in its pleadings.

*McCrary v. County of Nassau*, 493 F. Supp. 2d 581, 587 (E.D.N.Y. 2007) (citing *Brass v.*

*American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)); *see also Chambers*

*v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (even if document is not

incorporated by reference, court may consider it if it is "integral" to the complaint, *i.e.*, the

complaint relies heavily upon its terms and effect); *Faulkner v. Beer*, 463 F.3d 130, 134 (2d

Cir. 2006) (even if document is "integral" to the complaint, it must be clear on the record

that no dispute exists regarding authenticity, accuracy, or relevance of the document).

Beyond this, when "matters outside the pleadings are presented to and not excluded by

the court, the motion must be treated as one for summary judgment under Rule 56 [and]

[a]ll parties must be given a reasonable opportunity to present all the material that is

pertinent to the motion."  Fed. R. Civ. P. 12(d).

As discussed at further length immediately below, defendants' primary argument for

judgment on the pleadings is that none of the named plaintiffs has filed a claim for pension

benefits in accordance with the Halliburton Plan's claims procedures, as a prerequisite to

bringing a court action for judicial determination of benefits under an ERISA-regulated

employee benefit plan.  In response to this argument, plaintiffs have submitted a rather

lengthy "Declaration" of named plaintiff Kathy Joy Kirkendall (Item 22-2), along with several documents attached as exhibits.  Based upon the court's review, it is evident that a substantial amount of this material is directed at the exhaustion issue, and was neither incorporated by reference in the pleadings nor relied upon by plaintiffs in such a manner as to be deemed integral to the claims alleged in the complaint.

Accordingly, to the extent such materials are considered by this court in its determination of the issues presented by defendants' motion, the motion will be treated as a motion for summary judgment pursuant to Rule 56, which the court must grant "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Kennedy v. Empire Blue Cross and Blue Shield*, 796 F. Supp. 764, 765 (S.D.N.Y. 1992) (Rule 12(b)(6) motion converted to Rule 56 motion upon consideration of materials outside the pleadings on the issue of failure to exhaust), *aff'd*, 989 F.2d 588 (2d Cir. 1993).  In addition, the court's review of the submissions on file indicates that the parties have been provided a reasonable opportunity to present all the material that is pertinent to a motion for summary judgment, as required by Rule 12(d).

## B.    Exhaustion of Administrative Remedies

ERISA section 502 provides a private cause of action for a participant in a covered employee benefit plan "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B); *see Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 509 (2d Cir. 2002).  The statute also requires

7

every employee benefit plan to establish internal claims procedures in order to provide plan participants with adequate and understandable written notice of the reasons for denial of benefits, and to afford reasonable opportunity for full and fair review of the denial.  *See* 29 U.S.C. § 1133; *Bernikow v. Xerox Corp. Long-Term Disability Income Plan*, 517 F. Supp. 2d 646, 650 (W.D.N.Y. 2007).

Courts within the Second Circuit have long recognized "the firmly established federal policy" requiring plaintiffs seeking relief under section 502(a)(1)(B) to demonstrate that they have fully pursued the claims procedures prescribed by the relevant employee benefit plan prior to bringing suit.  *Alfarone v. Bernie Wolff Const. Corp.*, 788 F.2d 76, 79 (2d Cir.), *cert. denied*, 479 U.S. 915 (1986); *see also Kennedy*, 989 F.2d at 594.  The primary purposes of this policy are to:  "'(1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not *de novo*.'"  *Kennedy*, 989 F.2d at 594 (quoting *Denton v. First Nat'l Bank of Waco, Texas*, 765 F.2d 1295, 1300 (5th Cir.), *reh'g denied*, 772 F.2d 904 (5th Cir. 1985)).  Adherence to the exhaustion requirement "helps to reduce the number of frivolous lawsuits under ERISA, promotes the consistent treatment of claims for benefits, provides a non-adversarial method of claims settlement, and minimizes the costs of claims settlement."  *McNinch v. Goodyear Tire and Rubber Co., Inc.*, 2005 WL 735963, at *3 (W.D.N.Y. Mar. 30, 2005) (citing *Kennedy*, 989 F.2d at 594; *Amato v. Bernard*, 618 F.2d 559, 567 (9th Cir. 1980)).

Consistent with these purposes, the federal courts regularly dismiss claims for judicial determination of benefits under an ERISA-regulated plan where the plaintiff has failed to plead and prove exhaustion of the plan's administrative remedies.  *See Chapman*, 288 F.3d at 511 (citing *Kennedy*, 989 F.2d at 594); *Bernikow*, 517 F. Supp. 2d at 650. Only where the plaintiff can "make a 'clear and positive showing' that pursuing available administrative remedies would be futile" will a court release the plaintiff from the exhaustion requirement.  *Kennedy*, 989 F.2d at 594 (quoting *Fizer v. Safeway Stores*, 586 F.2d 182, 183 (10th Cir. 1978)); *see also Davenport v. Harry N. Abrams, Inc.*, 249 F.3d 130, 133 (2d Cir. 2001).

In this case, plaintiffs allege in Count II of the complaint (under the heading "Benefit Claim") that they "are entitled to have their past, present and future benefits redetermined using the actual date of their termination from employment by Dresser-Rand, and to be paid the difference between the correctly determined benefit and any benefit they have received from the Plan . . ." (Item 1, ¶ 37).   Although no statutory provision is cited, this claim falls squarely within the scope of relief available in a civil action authorized by ERISA section 502(a)(1)(B).  As such, the claim asserted in Count II is clearly subject to the exhaustion requirement.

However, the complaint contains no factual allegations to indicate, or give rise to a reasonable inference, that any of the named plaintiffs have ever submitted a claim for benefits under the claims procedures established by the Halliburton Plan.  Indeed, there is no dispute of material fact in this regard.  Rather, plaintiffs contend that Ms. Kirkendall did exhaust plan remedies by making a specific inquiry in March 2003 about her eligibility

for subsidized early retirement.[1]  In support of this contention, Ms. Kirkendall states in her "Declaration" that, in March 2003, she directed her counsel, Norman Stein, to file a benefit claim on her behalf "to determine [her] rights under the Plan, to see if [she] would get the age 55 early retirement subsidy when [she] retired." (Item 22-2, ¶ 43).  Attached to plaintiff's Declaration is a letter from Mr. Stein dated March 14, 2003, requesting "clarification of [plaintiff's] benefit rights" with respect to the issues of subsidized early retirement benefits and the timing and calculation of lump sum payments (*id.*, Exh. F). However, the court's review of this letter reveals no factual information from which the reasonable inference can be drawn that Ms. Kirkendall (or Mr. Stein acting on her behalf) actually submitted a claim for pension benefits that was processed by the Benefits Administrator or the Plan's Administration Committee in accordance with the Plan's Claims Procedures (*see* Item 12, Exh. D, §§ III, IV); received an adverse determination of her claim (*see id*. at §§ V, VI); or requested review of the administrator's determination (*see id.* at §§ VII, VIII).

Plaintiffs further contend that Ms. Kirkendall exhausted her administrative remedies by calling the Halliburton Pension Center in January 2006 and requesting a "retirement quote" (Item 22-2, ¶ 49).  In response, Halliburton sent her a "retirement package" under cover of a letter dated January 20, 2006, which included a summary and explanation of her pension benefit options, along with application forms and instructions for submitting a claim for benefits (*id.*, Exh. H).  Ms. Kirkendall did not submit the application.  Instead, she

---

[1] Plaintiffs apparently concede that named plaintiffs Wesley Snyder, Barbara Caya, and Bonnie Seth did not pursue the Plan's Claims Procedures, or otherwise exhaust their administrative remedies, prior to commencement of this action.

contends that Halliburton's response amounted to an adverse determination of her benefits claim, since it was obvious from the benefit summary that she was not entitled to an early retirement subsidy.

This contention must be rejected.  Ms. Kirkendall's January 2006 contact with the Halliburton Pension Center was nothing more than a request for retirement information, to which the Fund adequately responded.  Instead of following through with an application for pension benefits in accordance with the Fund's Claims Procedures, she "gave up" (Item 22-2, ¶ 55) and filed this lawsuit seeking judicial "redetermination" of her pension benefit rights.  As the courts within the Second Circuit have repeatedly held, if this manner of informal inquiry and "denial" of a benefits claim "that was never filed or formally presented is reviewable in federal courts, then, in such situations, the courts and not ERISA trustees will be primarily responsible for deciding claims for benefits." *Barnett v. IBM Corp.*, 885 F. Supp. 581, 588 (S.D.N.Y. 1995), *quoted in Park v. Trustees of 1199 Seiu Health Care Employees Pension Fund*, 418 F. Supp. 2d 343, 355 (S.D.N.Y. Sept. 15, 2005).

> In such situations, there is not a sufficiently clear record of administrative action to support effective judicial review and it is difficult, if not impossible, for a court to apply an arbitrary and capricious standard of review rather than engaging in review de novo.  Additionally, allowing judicial review in such situations would encourage frivolous lawsuits by allowing plaintiffs to sue upon the mere pleading of a *de facto* denial of an unfiled claim, would discourage settlement of claims, and would likely increase the costs of claims settlement.

*Barnett*, 885 F. Supp. at 588.

The court also rejects plaintiffs' contention that any further exhaustion of Plan remedies would be futile in light of Halliburton's policy of treating Dresser-Rand employees as terminated as of March 1, 2000 (*see* Item 22, pp. 7-8).  Futility in the ERISA context is

"perhaps best understood as a term of art that considers whether, in light of both the claimant's and the plan administrator's actions, it is fair to require the dismissal of the claimant's suit pending her reapplication for benefits in accordance with procedures set forth in the summary plan description." *Ludwig v. NYNEX Serv. Co.*, 838 F. Supp. 769, 781 (S.D.N.Y. 1993). In *Ludwig*, the court surveyed the applicable case law reported at the time and found that courts will invoke the futility doctrine, and waive the exhaustion requirement, in the following circumstances: (1) "where, for summary judgment purposes, there is a material issue of fact as to whether the claimant has properly appealed a denial of benefits through the specified administrative channels"; (2) "where the plan has failed to respond to the claimant's, or the claimant's representative's, written request for a review of the plan's benefit eligibility determination"; and (3) "where there is a material issue of fact as to whether the plaintiff was informed of the appeals process." *Ludwig*, 838 F. Supp. at 781-82 (citations omitted).

In this case, as discussed above, there is no genuine issue regarding whether Ms. Kirkendall, or any of the named plaintiffs, followed the Claims Procedures specified in the Plan–including the requirement that a claimant's request for review of an adverse determination be submitted in writing (*see* Item 12, Exh. D, § VII). In addition, based on the materials submitted, it is clear to the court that Ms. Kirkendall was fully aware of the Plan's formal application and appeals process (*see* Item 22-2, ¶ 22, & Exh. A-1 (Summary Plan Description), p. 29 ("Claims and Appeals Procedures")). Under these circumstances, the court finds that plaintiffs have failed to make a "clear and positive showing" that pursuing available administrative remedies would be futile. *Kennedy*, 989 F.2d at 594-95

(rejecting plaintiffs' contention of futility where there was "no evidence in the record that any ERISA plaintiff even *notified* [the plan administrator] of any disputed claim.") (emphasis in original).

Based on this analysis, plaintiffs' "Benefits Claim" set forth in Count II of the complaint must be dismissed for failure to exhaust administrative remedies.[2]

## C.    Breach of Fiduciary Duty

In Count IV of the complaint, plaintiffs claim that Halliburton breached its fiduciary duties of loyalty and prudence when it caused the Plan to determine eligibility for pension benefits based on the wrong date of termination (Item 1, ¶¶ 42-44).[3]   Defendants seek dismissal of Count IV on the ground that this claim is simply an attempt to avoid the exhaustion requirement by recasting the benefits claim as a claim for violation of the substantive statutory provisions establishing the appropriate standard of care for plan fiduciaries to discharge their duties, as to which the exhaustion requirement does not apply.

---

[2]Defendants also contend that, to the extent Count II survives the motion to dismiss, Halliburton should be dismissed from the case because it is not a proper party to a claim for recovery of benefits under an ERISA plan.  Having granted defendants' motion to dismiss Count II, the court declines to address this argument.

[3]Although no specific statutory provision is cited by plaintiffs, ERISA section 404 provides the following "prudent man standard of care" central to a claim for breach of fiduciary duty under ERISA:

> . . . a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of providing benefits to participants and their beneficiaries; and defraying reasonable expenses of administering the plan . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . . .

29 U.S.C. § 1104(a)(1)(A), (B).

As noted by the Third Circuit in *Harrow v. Prudential Ins. Co. of America*, 279 F.3d 244 (3rd Cir. 2002), there is "sharp disagreement" between the circuits as to whether plaintiffs must exhaust administrative remedies before bringing suit in federal court to assert a violation of substantive statutory provisions, like breach of fiduciary duty in violation of ERISA section 404.  *Id.* at 253 n. 10.  Although the Second Circuit has not directly addressed this question, *see Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 102 (2d Cir. 2005) (recognizing the circuit split, but declining to "here decide whether administrative exhaustion is a prerequisite to a statutory ERISA claim"), district courts within this circuit have drawn a distinction between claims relating to violations of the terms of a benefit plan and claims relating to statutory violations of ERISA.  *See Role v. Johns Hopkins Bayview Medical Center*, 2008 WL 465574, at *3-4 (E.D.N.Y. Feb. 15, 2008) (citing cases).

In one such case, *American Medical Ass'n v. United Healthcare Corp.*, 2007 WL 1771498 (S.D.N.Y. June 18, 2007), upon surveying the case law developments in this regard, the district court stated "[t]he prevailing rule . . . that bona fide breach of fiduciary duty claims–that is, those that are based on an interpretation of the ERISA statute rather than of a plan and are not claims for benefits artfully pled as claims for breach of fiduciary duty–are statutory and not subject to the administrative exhaustion requirement."  *Id.* at *15 (citing cases from the First, Third, Fourth, Fifth, Sixth, Ninth, and Tenth Circuits).  As summarized in *Harrow*:

> Plaintiffs cannot circumvent the exhaustion requirement by artfully pleading benefit claims as breach of fiduciary duty claims.  When the facts alleged do not present a breach of fiduciary duty claim that is independent of a claim for benefits, the exhaustion doctrine still applies.  A claim for breach of fiduciary

14

> duty is "actually a claim for benefits where the resolution of the claim rests upon an interpretation and application of an ERISA-regulated plan rather than upon an interpretation and application of ERISA."

*Harrow*, 279 F.3d at 253-54 (quoting *Smith v. Sydnor*, 184 F.3d 356, 362 (4th Cir. 1999), *cert. denied*, 528 U.S. 1116 (2000); other citations omitted).

Finding this rationale persuasive, and applying it to the circumstances presented in this case, the conclusion must be drawn that the facts alleged in Count IV of the complaint do not present a breach of fiduciary duty claim that is independent of plaintiffs' claim for benefits asserted in Count II.  Plaintiffs' breach of fiduciary duty claim is based upon allegations regarding the plan administrator's determination of participants' eligibility for pension benefits under the Halliburton Plan.  Clearly, resolution of this claim necessarily rests upon an interpretation of the Plan's eligibility requirements, rather than upon any interpretation or application of the ERISA statute itself.  Accordingly, the court finds that the exhaustion requirement applies to the claims asserted in Count IV, and this claim must also be dismissed because–as explained above–none of the named plaintiffs pursued the administrative procedures specified in the Plan.

## D.    ERISA Sections 204 and 208

In Count II, plaintiffs allege that defendants' "systematic denial of vesting service after March 1, 2000 with respect to qualification for previously-accrued early retirement benefits and/or retirement-type subsidies amounts to an amendment of the Plan to eliminate or reduce such accrued  benefits," in violation of ERISA sections 204(g) and 208, and that defendants implemented the amendment without notice, in violation of ERISA sections 204(h) (Item 1, ¶¶ 39-40).  Defendants seek dismissal of this claim on the ground

that there was no actual amendment of the Halliburton Plan, which is necessary to trigger the protections of these provisions.

### 1.      Section 204

ERISA section 204, entitled "Benefit accrual requirements," was adopted by Congress to safeguard pension benefits that have been promised to employees. *See Frommert v. Conkright*, 433 F.3d 254, 263 (2d Cir. 2006).  Section 204(g) is referred to as the "anti-cutback rule," which "protects employees' expectations in their accrued benefits." *Id.*  As pertinent here, section 204(g) provides:

> (g)  Decrease of accrued benefits through amendment of plan
>
> (1) The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan . . . .
>
> (2) For purposes of paragraph (1), a plan amendment which has the effect of--
>
>> (A) eliminating or reducing an early retirement benefit or a retirement-type subsidy  . . .
>
> with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits.

29 U.S.C. § 1054(g).  Section 204(h) provides that a pension plan may not be amended in a way that reduces future benefit accrual without proper written notice to plan participants.  *See* 29 U.S.C. § 1054(h).

Defendants seek dismissal of plaintiffs' claim for violation of these provisions on the ground that there was no actual amendment of the Halliburton Plan to trigger the protections of the anti-cutback rule.  Defendants rely on the preponderance of circuit court authority adhering to the general rule that the protections of section 204(g) and (h) apply

only to actual amendments to the terms of a Plan, not to an interpretation of terms which amounts to a constructive amendment of the Plan.  *See Richardson v. The Pension Plan of Bethlehem Steel Corp.*, 112 F.3d 982, 987 (9th Cir. 1997); *Stewart v. National Shopmen Pension Fund*, 730 F.2d 1552 (D.C.Cir.), *cert. denied*, 469 U.S. 834 (1984); *Dade v. N. Am. Phillips Corp.*, 68 F.3d 1558, 1562 (3d Cir. 1995); *Dooley v. Am. Airlines, Inc.*, 797 F.2d 1447, 1451 (7th Cir. 1986), *cert. denied*, 479 U.S. 1032 (1987); *Hunger v. AB*, 12 F.3d 118,121 (8th Cir. 1993), *cert. denied*, 512 U.S. 1206 (1994).

The rule is perhaps best explained in the D.C. Circuit's *Stewart* opinion:

[T]he word "amendment" [in section 204(g)] is used as a word of limitation. Congress did *not* state that any change would trigger the . . . provision[ ]; it stated that any change by *amendment* would do so.  . . .

The plaintiffs' construction would stretch the term "amendment" nearly to the breaking point.  Under their construction, reducing any benefits, authorized by the plan, of persons whose rights are vested, would constitute an "amendment."  While speculation regarding why Congress chooses specific language is not always fruitful, it should be noted that had Congress meant [section 204(g)] to apply to "any reduction in benefits to vested participants," it could easily have said so.

*Stewart*, 730 F.2d at 1561; *see also Dooley*, 797 F.2d at 1451-52 (applying *Stewart*'s "commonsensical rule of law" to find that plan fiduciaries' "valid exercise of a provision which was already firmly ensconced in the pension document" did not amount to amendment of the plan in violation of section 204(g)); *Oster v. Barco of California Employees' Retirement Plan*, 869 F.2d 1215, 1220-21 (9th Cir. 1988) (expressly adopting the reasoning of *Stewart* and *Dooley*); *Lechleiter v. Proctor & Gamble Distributing Co.*, 2002 U.S. Dist. LEXIS 8054, at *5-8 (D.Conn. Mar. 27, 2002) (citing with approval *Stewart*, *Dooley*, and *Richardson*; holding that sale of subsidiary resulting in employees' inability to

accrue creditable service beyond sale date did not amount to "actual amendment" protected by section 204(g)) (not published in WL).

In this case, plaintiffs do not allege that defendants eliminated or reduced plan participants' accrued early retirement benefits or subsidies by actual amendment of the Plan, but rather, that defendants' "systematic denial of vesting service after March 1, 2000" with respect to such benefits "amounts to" an amendment sufficient to trigger the protections of ERISA section 204(g).  Plaintiffs cite *Hein v. Federal Deposit Insurance Corp.*, 88 F.3d 210 (3d Cir. 1996), *cert. denied*, 519 U.S. 1056 (1997), for the proposition that "[a]n erroneous interpretation of a plan provision that results in the improper denial of benefits to a plan participant may be construed as an 'amendment' for the purposes of ERISA § 204(g)."  *Hein*, 88 F.3d at 216.  However, the Third Circuit ultimately determined in *Hein* that ERISA § 204(g) did not apply to the facts of that case, finding that the plan administrator's "accurate interpretation of the Plan provisions . . . cannot be considered an amendment of the Plan."  *Hein*, 88 F.3d at 219.

In any event, the reasoning in *Hein* suggesting that a plan administrator's erroneous denial of benefits can amount to an amendment of the plan sufficient to trigger the protections of ERISA's anti-cutback rule is called into question by the substantial weight of authority cited above holding that section 204(g) "*means . . . what it says*," *Stewart*, 730 F.2d at 1561, *i.e.*, that the prohibition against a plan amendment which has the effect of eliminating or reducing an early retirement benefit or a retirement-type subsidy applies only to actual amendments to the terms of the plan, not to a plan administrator's interpretation of plan provisions which results in a reduction of benefits.  Applying this

"commonsensical rule of law" in this case, the court finds that plaintiffs have failed to allege

facts sufficient to invoke the protections of ERISA section 204.

### 2.     Section 208

ERISA section 208 provides, in pertinent part:

> A pension plan may not merge with . . . any other plan . . . unless each participant in the plan would (if the plan then terminated) receive a benefit immediately after the merger, consolidation, or transfer which is equal to or greater than the benefit he would have been entitled to receive immediately before the merger . . . (if the plan had then terminated).

29 U.S.C. § 1058.

As outlined above, the clear and unambiguous language of the Merger Document

effecting the merger of the DICON Plan into the Halliburton Plan expressly states that all

of the provisions of the DICON Plan in effect on the December 31, 2001 merger date "shall

remain in effect . . . as a part of, and shall be incorporated into, the [Halliburton] Plan for

the benefit of the 'participants' in the DICON Plan . . . , who shall continue to be covered

by such provisions to the exclusion of any other provisions of the [Halliburton] Plan."  (Item

12, Exh. C, ¶ 3).  This language closely tracks the statutory language, and Plaintiffs have

failed to allege or come forward with evidence to show that the merger of the Plans had

any effect on whatever early retirement credits or subsidies they were entitled to

immediately before the merger.

Based on this analysis, the court finds that plaintiffs have failed to state a plausible

claim for relief under ERISA sections 204 and 208, and defendants are entitled to

judgment on the pleadings dismissing Count II of the complaint.

**E.      Declaratory Judgment**

Finally, in Count I of the complaint plaintiffs seek declaratory judgment "with respect to whether the sale of Halliburton's interest in Dresser-Rand had the effect of terminating the existence of Dresser-Rand and the employment of its employees."  (Item 1, ¶ 34). However, the law is clear that declaratory relief, whether sought under the Declaratory Judgment Act (28 U.S.C. § 2201), Rule 57 of the Federal Rules of Civil Procedure, or "added to claims for relief brought under other auspices . . . ," *Nat'l Union Fire Ins. Co. of Pittsburgh v. Karp*, 108 F.3d 17, 21(2d Cir. 1997), is not a separate cause of action but instead "merely offers an *additional remedy* to litigants."  *Id*.  Accordingly, in the absence of a viable claim under ERISA for redetermination of pension benefits, breach of fiduciary duty, or denial of accrued early retirement benefits by actual amendment of the Plan, the complaint likewise fails to support a claim for declaratory relief.

## CONCLUSION

For the foregoing reasons, defendants' motion for judgment on the pleadings (Item 11) is granted with respect to Count I of the complaint seeking declaratory judgment, and Count II seeking relief pursuant to ERISA sections 204 and 208.  Defendants' motion is converted to a motion for summary judgment with respect to Count III seeking redetermination of pension benefits, and Count IV seeking relief for breach of the fiduciary duties imposed by ERISA, and that motion is granted for failure to exhaust the

administrative claims procedures established by the relevant Plan.  Plaintiffs' complaint is

dismissed, in its entirety, and with prejudice.[4]

      The parties' joint motion for a status conference (Item 25) is denied as moot.

      The Clerk of the Court is directed to enter judgment in favor of defendants, and to

close the case.

      So ordered.


                   \s\ John T. Curtin
                    JOHN T. CURTIN
            United States District Judge

Dated:     June 8, 2011
           Buffalo, New York

---

[4]Plaintiffs submit that if the court grants defendants' motion, it should also grant plaintiffs leave to amend the complaint in order to correct any identified pleading deficiencies.  Although leave to amend should be granted "freely . . . when justice so requires . . . ," Fed. R. Civ. P. 15(a)(2), it is with the district court's "sound discretion . . . to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  Where, as here, "[t]he problem with [the plaintiff's] causes of action is substantive[,] better pleading will not cure it."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).  Accordingly, leave to amend would be futile, and the complaint is dismissed with prejudice.