11-2733-cv
*Kirkendall v. Halliburton, Inc.*

UNITED STATES COURT OF APPEALS
For the Second Circuit
_____

August Term, 2012

(Argued:  August 23, 2012                              Decided: January 29, 2013)

Docket No. 11-2733-cv
_____

K<small>ATHY</small> J<small>OY</small> K<small>IRKENDALL</small>, W<small>ESLEY</small> S<small>NYDER</small>, B<small>ARBARA</small> C<small>AYA</small>, B<small>ONNIE</small> S<small>ETH</small>, on behalf of
themselves and others similarly situated,

*Plaintiffs-Appellants*,

—v.—

H<small>ALLIBURTON</small>, I<small>NC</small>., H<small>ALLIBURTON</small> R<small>ETIREMENT</small> P<small>LAN</small>, D<small>RESSER</small> I<small>NDUSTRIES</small>, I<small>NC</small>.,
C<small>ONSOLIDATED</small> R<small>ETIREMENT</small> P<small>LAN</small>,

*Defendants-Appellees*.
_____

Before: C<small>ABRANES</small>, S<small>TRAUB</small>, and H<small>ALL</small>, *Circuit Judges*.
_____

On appeal from an Order dated June 8, 2011, by the United States District Court for the Western District of New York (John T. Curtin, *Judge*) granting Defendants-Appellees' motion for judgment on the pleadings and for summary judgment.  The District Court held that plaintiffs, participants in an ERISA plan who seek clarification of the benefits to which they might be entitled in the future, had failed to exhaust their administrative remedies and were thus barred from bringing suit in federal court.  It also dismissed plaintiffs' claim for improper amendment because plaintiffs did not allege a formal amendment to the plan's terms.  First, we hold that when a plaintiff reasonably interprets a plan's terms not to require exhaustion of her administrative remedies and does not exhaust her remedies as a result, she is not required to exhaust her administrative remedies.  We therefore **VACATE** the portion of judgment of the District Court which dismissed plaintiffs' claims for failure to exhaust and **REMAND** for further proceedings consistent with this opinion.  Second, we hold that plaintiffs have not alleged an improper amendment without deciding whether only an actual amendment to the text of a plan can qualify as an amendment under 29 U.S.C. § 1054(g).  We therefore **AFFIRM** the portion of the District Court's judgment denying plaintiffs' claims relating to improper amendment.
_____

DAVID B. RODES (John T. Tierney, Jeffery V. Mansell, *on the brief*), Goldberg, Persky & White, P.C., Pittsburgh, PA, *for Plaintiffs-Appellants*.

SHAY DVORETZKY (Kevin Noble, *on the brief*), Jones Day, Washington, DC; James S. Urban, Jones Day, Pittsburgh, PA, *for Defendants-Appellees*.

_____

STRAUB, *Circuit Judge*:

Plaintiff-appellant Kathy Joy Kirkendall ("Kirkendall") is a longtime employee of Dresser-Rand Company ("Dresser-Rand"). Dresser-Rand was a partnership, first between Dresser Industries, Inc. ("Dresser") and Ingersoll-Rand Company ("Ingersoll"), and later between Halliburton, Inc. ("Halliburton") and Ingersoll. In 2000, Halliburton sold its interest in Dresser-Rand to Ingersoll and subsequently informed Dresser-Rand employees that, for pension plan purposes, it now considered their date of termination to be March of 2000. As a consequence, Kirkendall's newly-quoted pension benefit for the amount she would receive if she retired early was not as high as previously quoted to her.

In 2007, Kirkendall and her co-plaintiffs filed this putative class action suit without first availing themselves of the procedure described for "benefits claims" in the plan documents. Their suit, brought pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002-1461, included claims for redetermination of benefits and for improper amendment of plan terms. The District Court held that Kirkendall's complaint must be dismissed because she had failed to exhaust her administrative remedies and because she had not alleged an actual amendment of the plan's terms. We hold that because Kirkendall reasonably interpreted the plan's exhaustion requirement not to apply to a determination of future benefits and did not exhaust her administrative remedies as a result, she was not required to exhaust her administrative remedies. We also hold that Halliburton's actions did not constitute an

amendment within the meaning of ERISA § 204(g).  29 U.S.C. § 1054(g).  We therefore **VACATE** the judgment of the District Court insofar as it dismissed plaintiffs' claims for failure to exhaust and **AFFIRM** the District Court's judgment insofar as it denies plaintiffs' claims relating to improper amendment, and we **REMAND** for further proceedings consistent with this opinion.

## BACKGROUND[1]

Kirkendall and her co-plaintiffs, Wesley Snyder, Barbara Caya, and Bonnie Seth, were all employees of Dresser-Rand in February of 2000.  Dresser-Rand was formed as a partnership between Dresser and Ingersoll on January 1, 1987.  Dresser-Rand employees received pension benefits through the Dresser Industries, Inc. Consolidated Retirement Plan ("the Dresser Plan"), which was sponsored by Dresser.

In September 1998, Halliburton became the successor by merger to Dresser and sponsor of the Dresser Plan.  Effective February 28, 2000, Halliburton sold its interest in Dresser-Rand to Ingersoll, leaving Ingersoll as the sole owner of Dresser-Rand.  Nonetheless, Dresser-Rand continued to operate under Ingersoll, and, apparently, its employees were still participants in the Dresser Plan—or at least they so believed.  Subsequently, on December 31, 2001,[2] the Dresser Plan was merged into the Halliburton Retirement Plan ("the Halliburton Plan" or "the Plan").

Kirkendall takes issue with Halliburton's administration of the Plan with respect to her and other Dresser-Rand employees after the sale.  Although Kirkendall seems to allege that the end result of the sale was that her pension benefit decreased, it is, at times, difficult to understand

---

[1] In reviewing Halliburton's motion for judgment on the pleadings, "we draw all facts—which we assume to be true unless contradicted by more specific allegations or documentary evidence—from the Complaint and from the exhibits attached thereto." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).

[2] According to the Complaint, the merger of the plans was effective December 31, 2000, not 2001.  However, it is clear from the record that the correct date is December 31, 2001.  J.A. 299.

3

through what mechanism this decrease came about. The difficulty perhaps reflects Kirkendall's own confusion regarding why her pension benefit dropped, as well as the quality of the information she has received about the changes.[3]

Kirkendall alleges that, beginning in July 2002, Halliburton "has taken the position" that the sale had the effect of terminating Dresser-Rand employees as of March 1, 2000, such that they were no longer participants in the Dresser (later, Halliburton) Plan. In other words, despite the fact that she and her coworkers continue to be Dresser-Rand employees, they apparently no longer have an employment relationship with Halliburton. Because the Plan Administrator uses a termination date of March 1, 2000, in calculating participants' pension benefits, rather than whatever (presumably later) date they actually leave the employ of Dresser-Rand, their pension benefits will be lower as a result.

In particular, Kirkendall alleges that she lost an early retirement subsidy as a result of the sale. During a June 15, 2002, meeting for Dresser-Rand employees to discuss the consequences of the sale, Kirkendall learned that employees would no longer be eligible for an early retirement subsidy unless they had reached the age of fifty-five before March 1, 2000. It is unclear why Kirkendall and her fellow employees did not learn of the changes until more than two years after the sale.

Following the June 15 meeting, Kirkendall made various efforts to clarify what changes had been made and what legal avenues were available to her to contest the changed calculation of her pension benefits, should she opt for early retirement. On October 1, 2002, Kirkendall sent a letter to Ann Head, who apparently worked in the Halliburton Benefits Center and led the June 15 meeting, requesting "a copy of any amendment to the Plan that employees not 55 years of age

---

[3] At oral argument, Halliburton's counsel provided little information regarding the specifics of how and why Dresser-Rand employees' pension benefits changed.

4

by March 1, 2000 were no longer eligible for the early retirement factors." She received no response.

On March 14, 2003, Norman Stein ("Stein") of the Pension Counseling Clinic at University of Maine School of Law sent a letter to a Monica Thurman, identified only as a Halliburton employee, on Kirkendall's behalf seeking clarification of her rights under the Halliburton Plan. The letter began by noting that Thurman had previously assured Stein that "the actuarial firm employed by the plan would send figures for Kathy's benefits," but noted also that no such information had arrived. The letter went on to raise legal objections to Halliburton's calculation of benefits to date and to "request[] clarification of [Kirkendall's] benefit rights with respect to these . . . issues and any rights for reconsideration or appeal after you answer her." Neither Kirkendall nor Stein received any response to this letter.[4]

In January 2006, Kirkendall called the Halliburton Pension Center to ask for a retirement quote. The person who answered the phone told her that she had already received the money to which she was entitled, which Kirkendall took to mean that she had been terminated from the Halliburton Plan. Shortly thereafter, Kirkendall received a pension quote that stated her monthly payment would be $86.62, lower than a statement of benefits she had received in 1995. She interpreted this figure to mean that "it was obvious . . . that Halliburton was still not giving me the early retirement subsidy."

The Halliburton Plan includes procedures that describe how participants are to file claims for benefits ("the Claims Procedures"). Article III of the Claims Procedures provides,

> To file a benefit claim under the Plan, a Claimant must obtain from the Benefits
> Administrator the information and benefit claim forms, if any, provided for in the
> Plan and otherwise follow the procedures established from time to time by the

---

[4] Kirkendall's declaration describes a response by Hewitt & Associates, an apparent reference to a letter attached as an exhibit to the declaration. The letter is dated March 10, 2003, however, four days before the letter sent by Stein. Halliburton conceded at oral argument that, in fact, Kirkendall had received no response at all to her inquiry.

5

> Committee or the Benefits Administrator for claiming Plan benefits. . . . *A Claimant may only request a Plan benefit by fully completing and submitting to the Benefits Administrator the benefit claim forms*, if any, provided for in the Plan and otherwise following the procedures established from time to time by the Committee or the Benefits Administrator for claiming Plan benefits. In connection with the submission of a claim, the Claimant may examine the Plan and any other relevant documents relating to the claim, and *may submit written comments relating to such claim to the Benefits Administrator coincident with the filing of the benefit claim form*. Failure of a Claimant to furnish written proof of loss or to comply with the claim submission procedure will invalidate such claim unless the Benefits Administrator in its discretion determines that it was not reasonably possible to provide such proof or comply with such procedure.

The Plan further provides, "Completion of the claims procedures . . . will be a condition precedent to the commencement of any external proceeding in connection with a claim for benefits . . . ."

On May 1, 2007, Kirkendall and her co-plaintiffs filed this suit. Kirkendall describes her decision to file a lawsuit thusly,

> At that moment it appeared to me that I would have to try to repeat the long, frustrating and unproductive process that my co-workers and I had tried, from 2002 through that moment. I felt that we had tried everything that we knew what to try and nothing had changed in regards to our pensions. People had lost the early retirement subsidy that they had been promised and on which they had based their financial plans. I thought that my co-workers and I had reached a dead end. I did not want to go through that process again, so I gave up.

The complaint alleges four counts, all stemming from Halliburton's allegedly incorrect determination that Kirkendall and her coworkers had been terminated as of March 1, 2000. The first count seeks declaratory judgment; the second seeks a redetermination of plaintiffs' benefits—which we understand to be a claim for clarification of future benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B); the third alleges an unlawful amendment pursuant to ERISA §§ 204(g) and 208, 29 U.S.C. §§ 1054(g), 1058; and the fourth alleges a breach of fiduciary duty.

Halliburton moved for judgment on the pleadings, arguing, *inter alia*, that Kirkendall and her co-plaintiffs had failed to exhaust their administrative remedies. The District Court granted the motion in full. *Kirkendall v. Halliburton, Inc.*, No. 07-cv-289-JTC, 2011 WL 2360058 (W.D.N.Y. June 9, 2011). In doing so the District Court converted the portions of the motion pertaining to Kirkendall's benefits redetermination claim and breach of fiduciary duty claim to one for summary judgment so that it could consider a declaration that Kirkendall submitted, along with accompanying exhibits. *Id*. at *4, *11.

The District Court agreed that Kirkendall had failed to exhaust her administrative remedies. It concluded that there was no evidence that Kirkendall had submitted a claim using the forms and procedures dictated by the Halliburton Plan and that Kirkendall's efforts to resolve her claim prior to filing suit did not indicate that recourse to the formal claims process would have been futile. *Id*. at *5-7. It concluded that Kirkendall's breach of fiduciary duty claim must similarly be dismissed because it was merely a benefits claim in breach-of-fiduciary-duty clothing, and so also required Kirkendall to exhaust her administrative remedies prior to filing suit. *Id*. at *7-8.

The District Court held also that a plaintiff may pursue a § 204(g) improper amendment claim only when she has alleged an actual amendment to the text of the plan, not when, as here, a plaintiff alleges a constructive amendment accomplished by interpretation of plan terms. *Id*. at *8-10. Kirkendall's claim that the merger between the Dresser Plan and Halliburton Plan resulted in a decrease in benefits in violation of § 208 was dismissed for failure to allege any ill effects of the merger of the Dresser Plan into the Halliburton Plan. *Id*. at *10-11. Finally, the District Court dismissed plaintiffs' claim for declaratory relief because such a claim provides merely an additional remedy to litigants, rather than an independent cause of action, and

7

1    plaintiffs had not adequately alleged a stand-alone cause of action under which they could seek

2    declaratory relief. *Id*. at \*11.

3    This timely appeal followed.

4    **DISCUSSION**

5    We review a judgment under Federal Rule of Civil Procedure 12(c) de novo*,* accepting

6    the complaint's factual allegations as true and drawing all reasonable inferences in the plaintiff's

7    favor. *Hayden v. Paterson,* 594 F.3d 150, 160 (2d Cir. 2010). "To survive a Rule 12(c) motion,

8    the complaint must contain sufficient factual matter to 'state a claim to relief that is plausible on

9    its face.'" *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012) (quoting *Bell Atl. Corp. v.*

10   *Twombly*, 550 U.S. 544, 570 (2007)).

11   We also review the grant of a motion for summary judgment de novo. *Novella v.*

12   *Westchester Cnty.*, 661 F.3d 128, 139 (2d Cir. 2011). Grant of a motion for summary judgment

13   is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to

14   judgment as a matter of law." Fed. R. Civ. P. 56(a).

15   Kirkendall challenges the District Court's holding that she failed to exhaust her

16   administrative remedies with respect to her redetermination of benefits claim and her breach of

17   fiduciary duty claim. She further contests its holding that she has failed to allege an improper

18   amendment pursuant to ERISA § 204(g).[5] We address each argument in turn.

19   **I.    Failure to Exhaust Administrative Remedies**

20   ERISA itself does not contain an exhaustion requirement; the requirement is instead

21   judge-made. *Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 445 (2d Cir. 2006). We

22   have described the exhaustion requirement as fulfilling the following purposes:

---

[5] Kirkendall does not dispute the District Court's holding that she has failed to state a claim for improper merger in violation of ERISA § 208.

8

to uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; to provide a sufficiently clear record of administrative action if litigation should ensue; to assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not *de novo*; to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned.

*Id.* (alterations omitted) (quoting *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993)).

The exhaustion requirement, however, is not absolute. We do not require plaintiffs to exhaust their administrative remedies where they "make a clear and positive showing that pursuing available administrative remedies would be futile," *Kennedy*, 989 F.2d at 594 (internal quotation marks omitted), and we allow plaintiffs to assert equitable defenses to the exhaustion requirement such as "waiver, estoppel, and equitable tolling," *Paese*, 449 F.3d at 444.

Implicit in the exhaustion requirement is the condition that a plaintiff must have an administrative remedy to exhaust. *See Kennedy*, 989 F.2d at 594 ("[E]xhaustion in the context of ERISA requires only those administrative appeals provided for in the relevant plan or policy."). Kirkendall contends that the Halliburton Plan provides no procedure for filing a claim, such as hers, for clarification of future benefits. Halliburton argues that Kirkendall did have such a remedy available to her and that she did not take advantage of it. Although it conceded at oral argument that Kirkendall's request for information was not the run-of-the-mill benefits claim, Halliburton nonetheless argues that Kirkendall should have filed a claim for benefits pursuant to Article III of the Claims Procedures prior to bringing suit in federal court.

Article III begins with the words, "To file a benefit claim under the Plan." Here, Kirkendall did not seek to retire immediately, but rather, sought to know what her benefits would be if and when she chose to pursue early retirement. The term "benefit claim" as set forth in the

9

1   Plan could be read to apply only when a plan participant is demanding benefits at the time when
2   she is filing the claim.  It is unclear, therefore, whether Kirkendall's inquiry as to the amount of
3   her benefits in the event of a future, hypothetical event was a "benefit claim" within the meaning
4   of the Plan such that it would be governed by the Article III Claims Procedures.  Compounding
5   this confusion is the fact that when Halliburton sent Kirkendall a benefits quote in 2006, the
6   cover letter described the enclosed claims form as an "Application for Retirement Benefits."
7   This language likewise suggests that Kirkendall should resort to this form only if she wanted to
8   receive her benefits in the immediate future.
9         Halliburton asserted at oral argument that Kirkendall's inquiry was nevertheless a benefit
10  claim because, even though the benefits would not actually be paid out until sometime in the
11  future, she is asking right now to have those benefits redetermined, according to what she thinks
12  is the correct interpretation of the plan.  To the extent that Kirkendall's inquiry does not fit
13  within the usual understanding of a benefit claim, Halliburton argued, Article III only entitled
14  Kirkendall to submit written comments relating to such claim to the benefits administrator
15  coincident with the filing of the benefit claim form.  Although Article III does state that
16  applicants "may submit written comments relating to such claim to the Benefits Administrator
17  coincident with the filing of the benefit claim form," it does not suggest that those seeking a
18  determination of future benefits must avail themselves of this procedure.
19        We have doubts as to whether Kirkendall's inquiry was truly a "benefit claim" within the
20  meaning of the Plan terms.  Regardless, we imagine that if the plan terms are a bit baffling to us,
21  they are equally baffling to plan participants such as Kirkendall.  Two of our sister circuits have
22  held that, where a plaintiff reasonably interprets the plan terms not to require exhaustion and, as
23  a result, does not exhaust her administrative remedies, the case may proceed in federal court.

10

1  *Watts v. BellSouth Telecomms., Inc.*, 316 F.3d 1203, 1209-10 (11th Cir. 2003) ("If a plan

2  claimant reasonably interprets the relevant statements in the summary plan description as

3  permitting her to file a lawsuit without exhausting her administrative remedies, and as a result

4  she fails to exhaust those remedies, she is not barred by the court-made exhaustion requirement

5  from pursuing her claim in court."); *Gallegos v. Mount Sinai Med. Ctr.*, 210 F.3d 803, 810 (7th

6  Cir. 2000) (same, on estoppel grounds).

7        This exception to the general exhaustion requirement is grounded in the statutory dictate

8  that the plan description "shall be written in a manner calculated to be understood by the average

9  plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such

10  participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C.

11  § 1022(a). As the Eleventh Circuit has observed, exempting from the general exhaustion

12  requirement those plan participants who "reasonably interpret" their ERISA plan not to impose

13  an exhaustion requirement will have the salutary effect of encouraging employers and plan

14  administrators to clarify their plan terms and, thereby, of leading more employees to pursue their

15  benefits claims through their plan's claims procedure in the first instance. *Watts*, 316 F.3d at

16  1209.

17        Halliburton's argument that Kirkendall would remain free to file a benefit claim as

18  outlined in the Claims Procedures if we were to affirm the decision of the District Court and, in

19  the event that she took issue with the result, would be able to appeal the outcome in federal court,

20  is therefore in tension with the statutory text and the underlying purposes of ERISA. ERISA

21  seeks to avoid saddling plaintiffs in such circumstances with the burdens and procedural delays

22  imposed by inartfully drafted plan terms. *See Costantino v. TRW, Inc.*, 13 F.3d 969, 975 (6th

23  Cir. 1994) (factoring the likelihood that "[c]osts for all parties would probably increase if

11

Case 1:07-cv-00289-FPG Document 31-1 Filed 04/17/13 Page 12 of 17
Case: 11-2733 Document: 52-1 Page: 12 01/25/2013 829623 17

Plaintiffs were forced to go back through the administrative process" into its determination that "exhaustion of administrative remedies in the present case would be purposeless, as well as futile and inadequate"). We therefore join the Seventh and Eleventh Circuits in holding that plan participants will not be required to exhaust administrative remedies where they reasonably interpret the plan terms not to require exhaustion and do not exhaust their administrative remedies as a result.

For the reasons described above, we find that the plan terms themselves are ambiguous as to whether Kirkendall was required to pursue administrative remedies to contest the Plan Administrator's calculation of potential future benefits. The question now remains as to whether Kirkendall failed to exhaust her administrative remedies because of this ambiguity; that is, whether she did indeed reasonably interpret the plan terms not to require her to file a benefits claim. We conclude that she did.

Kirkendall's attempts to resolve this dispute by writing letters and making inquiries with the assistance of counsel before she filed suit demonstrate that she was confused as to the procedure she should follow. In her March 14, 2003, letter sent through counsel, Kirkendall requested additional information regarding how she could contest the calculation of benefits provided to her. It is worth noting that such a step is exactly what one ERISA treatise recommends that litigants do when it seems that no administrative remedy exists. *See* 3 Ronald J. Cooke, ERISA PRACTICE AND PROCEDURE § 8:75 (2012) ("[B]etter practice would require that . . . if there are no remedies specified in the plan, that a practitioner representing a participant or beneficiary confirm in writing that the plan does not specify an internal procedure."). As noted above, it is not disputed that Kirkendall never received a response to this letter.

12

1    By 2006, when Kirkendall was considering retirement and sought to contest her apparent

2    ineligibility for an early retirement subsidy, she reports thinking, "I felt that we had tried

3    everything that we knew what to try and nothing had changed in regards to our pensions." It is

4    apparent that Kirkendall thought that she had pursued the avenues available to her and

5    reasonably concluded that the only means of vindicating her claim was through a lawsuit. Under

6    these circumstances, we conclude that Kirkendall was not required to exhaust her administrative

7    remedies.

8    Our holding that Kirkendall was not required to exhaust her administrative remedies

9    applies to Kirkendall's claims for benefits redetermination and for breach of fiduciary duty. *See*

10   *Kirkendall*, 2011 WL 2360058, at \*7-8 (dismissing both claims for failure to exhaust). In

11   addition, because the District Court dismissed Kirkendall's claim for declaratory relief for the

12   sole reason that she had alleged "no viable claim" that would merit declaratory relief, *id.* at \*11,

13   we reinstate Kirkendall's claim for declaratory relief, as well. It should be noted that while all of

14   the plaintiffs below were captioned as plaintiffs in this case, no argument was presented to this

15   Court regarding any plaintiff but Kirkendall. We therefore leave it to the District Court on

16   remand to consider whether the other plaintiffs named in this suit can satisfy the standard set

17   forth here.

18   We next consider the District Court's dismissal of Kirkendall's claim of improper

19   amendment pursuant to ERISA § 204(g).

20   **II.   Improper Amendment**

21   Kirkendall argues that the District Court erred in dismissing her claim that Halliburton

22   amended the terms of the Plan without adhering to the strictures of ERISA § 204(g), 29 U.S.C.

23   § 1054(g). This section provides, "The accrued benefit of a participant under a plan may not be

13

1  decreased by an amendment of the plan, other than an amendment described in section

2  1082(d)(2) or 1441 of this title." 29 U.S.C. § 1054(g)(1). Section 1082(d)(2) in turn requires

3  that before a plan administrator may adopt an amendment that has the effect of retroactively

4  reducing certain accrued benefits, the administrator must seek approval of such an amendment

5  from the Secretary of the Treasury and must make a showing of "substantial business hardship."

6  29 U.S.C. § 1082(d)(2).[6]

7  The District Court dismissed Kirkendall's § 204(g) claim because it held that § 204(g)

8  applies only to actual amendments and that Kirkendall had alleged no such amendment. The

9  District Court, in so holding, relied upon *Stewart v. National Shopmen Pension Fund*, a decision

10  by the Court of Appeals for the District of Columbia Circuit that held that § 204(g) applies only

11  to "actual amendments," defined as "actual change[s] in the provisions of the plan." 730 F.2d

12  1552, 1561, 1563 (D.C. Cir. 1984). The *Stewart* court applied this principle to a claim regarding

13  use of a plan provision that empowered plan trustees to cancel their obligation to participants

14  under certain circumstances, *id.* at 1554-55, holding that the trustees' later invocation of this

15  clause was merely an application of existing plan terms, rather than an "amendment," which it

16  defined as "an actual change in the provisions of the plan," *id.* at 1561. Other circuits have

17  subsequently adopted *Stewart*'s holding that § 204(g) only applies to actual amendments of the

18  plan's terms and not interpretations of previous provisions or exercises of discretion reserved by

19  the plan. *Richardson v. Pension Plan of Bethlehem Steel Corp.*, 112 F.3d 982, 987 (9th Cir.

20  1997); *Dooley v. Am. Airlines, Inc.*, 797 F.2d 1447, 1451-53 (7th Cir. 1986). The Third Circuit,

21  however, has suggested in dicta that a broader view of the term "amendment" beyond *Stewart*'s

22  limited understanding of an "actual amendment" is appropriate. *See Hein v. FDIC*, 88 F.3d 210,

---

[6] Section 1441 imposes different requirements, not relevant to this case, regarding when an entire plan may be terminated.

14

216 (3d Cir. 1996) ("An erroneous interpretation of a plan provision that results in the improper denial of benefits to a plan participant may be construed as an 'amendment' for the purposes of ERISA § 204(g).").

An intervening Treasury Regulation also calls into question the holding of *Stewart*. *See McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1118-19 (9th Cir. 2000). The Treasury Regulation in question, Treas. Reg. § 1.411(d)-4 (the "Regulation"), provides,

> Except as provided in paragraph (d) of Q&A–2 of this section with respect to certain employee stock ownership plans, a plan that permits the employer, either directly or indirectly, through the exercise of discretion, to deny a participant a section 411(d)(6) protected benefit provided under the plan for which the participant is otherwise eligible (but for the employer's exercise of discretion) violates the requirements of section 411(d)(6).

26 C.F.R. § 1.411(d)-4, Q & A 4. Title 26, Section 411(d)(6), to which the regulation refers, repeats the language of § 204(g), and Treasury Regulation § 1.411(d)-4 is applicable to both § 204(g) and § 411(d)(6). *McDaniel*, 203 F.3d at 1118; *see also Gillis v. Hoechst Celanese Corp.*, 4 F.3d 1137, 1144-46 (3d Cir. 1993).

On its face, the Regulation appears to require a different result from the particular facts at issue in *Stewart*. It prohibits plan provisions from building certain broad reservations of discretion into the plan terms, just the sort of provision at issue in *Stewart*. The parties in this case disagree as to whether the Regulation also calls into question *Stewart*'s holding that only a formal amendment violates the requirements of § 411(d)(6) and § 204(g). The Ninth Circuit did not have need to address this issue in *McDaniel* because it ultimately held that the regulation did not apply to the facts of the case under consideration. 203 F.3d at 1118. No other circuit has considered the interaction between Treasury Regulation § 1.411(d)-4 and ERISA § 204(g).

We need not address the precise reach of § 204(g) here because it is clear that even if § 204(g) could apply to changes not formally stylized as "amendments," what Kirkendall alleges

15

is not such an informal amendment. Kirkendall alleges only that after Halliburton sold its interest in Dresser-Rand, it informed Dresser-Rand employees that they would no longer be entitled to participate in the Halliburton Plan and, as a consequence, incorrectly calculated the benefit it owed to Kirkendall and others like her after they ceased to be eligible to participate. What she appears to dispute is the manner in which the calculation was made and the factual basis for Halliburton's calculation.[7] Kirkendall does not allege that the Halliburton Plan was terminated for employees who work for divisions of Halliburton other than Dresser-Rand or that any terms of the plan changed. What changed was merely her own, as well as her co-workers', eligibility to participate in the Halliburton Plan based on the change in their employer's relationship with Halliburton. Whatever the correct meaning of "amendment," Kirkendall's allegation that her benefits were incorrectly calculated falls outside of that definition. Even broadly interpreted, the word "amendment" contemplates that the actual terms of the plan changed in some way, *Stewart*, 730 F.2d at 1561, or that the plan improperly reserved discretion to deny benefits, 26 C.F.R. § 1.411(d)-4, and not, as claimed here, that an administrator made an incorrect factual determination of the date of a claimant's termination.

---

[7] We have focused our analysis on Kirkendall's allegation that Halliburton effectively revoked her early retirement benefit because this seems, from her briefing and statements at oral argument, to be her chief concern. As noted above, however, it is difficult to discern the true nature of whatever changes were made to the Halliburton Plan, as well as the legal mechanism that Halliburton allegedly used to bring them about. Of particular concern in this regard is the fact that two years elapsed between the time when Halliburton sold its interest in Dresser-Rand and when Dresser-Rand employees apparently learned that they would no longer be eligible for an early retirement benefit. It is puzzling why a simple determination that Dresser-Rand employees were no longer eligible to participate in the Halliburton Plan would take so long to communicate to plan participants. Further, at least one letter that Kirkendall received referenced "a recent amendment," although this amendment apparently enabled employees to receive a portion of the pension benefit as a lump sum, rather than as a monthly benefit, an alteration to the Plan with which Kirkendall does not appear to take issue. We attribute at least some of the lack of clarity in Kirkendall's submissions to the confusing nature of her communications with Halliburton, and we are reluctant to allow a plan administrator to profit from its apparent failure to communicate with plan participants in terms they can understand. Nonetheless, if there was an amendment to the Plan terms stemming from something beyond Halliburton's determination that it no longer had an employment relationship with Dresser-Rand employees, Kirkendall has not adequately alleged such an amendment. We note, however, that in the event that discovery reveals evidence of some amendment, plaintiff is entitled to seek leave to amend her complaint accordingly. *See* Fed. R. Civ. P. 15(a)(2).

16

In light of the foregoing, we affirm the judgment of the District Court with respect to Kirkendall's § 204(g) claim and leave for another day the question of whether a constructive amendment can trigger the requirements of § 204(g).

## CONCLUSION

The judgment of the District Court is therefore **VACATED** in part, insofar as the Court dismissed plaintiffs' claims for redetermination of benefits, breach of fiduciary duty, and declaratory relief, and **AFFIRMED** in part, insofar as the District Court dismissed plaintiffs' claims for improper amendment, and the case is **REMANDED** for further proceedings consistent with this opinion.