UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KATHY JOY KIRKENDALL, WESLEY SNYDER,
BARBARA CAYA, and BONNIE SETH on behalf of
themselves and others similarly situated,

                              Plaintiffs,

Case # 07-CV-289-FPG

v.

DECISION AND ORDER

HALLIBURTON, INC., HALLIBURTON RETIREMENT
PLAN, and DRESSER INDUSTRIES, INC. CONSOLIDATED
RETIREMENT PLAN,

                              Defendants.

## INTRODUCTION

On May 1, 2007, Plaintiffs Kathy Joy Kirkendall, Wesley Snyder, Barbara Caya, and Bonnie Seth filed a Complaint alleging that Defendants improperly denied them early retirement benefits and breached their fiduciary duty. ECF No. 1. In the Complaint, Plaintiffs allege the following: in Count I, Plaintiffs seek declaratory judgment as to whether they are entitled to early retirement benefits; in Count II, Plaintiffs allege that they are entitled to have their employment benefits correctly determined;[1] and in Count IV, Plaintiffs allege that Defendant Halliburton, Inc. breached its fiduciary duties of loyalty and prudence by choosing the incorrect date to determine benefits for Plaintiffs. *Id.*

Before the Court are Defendants' Motion for Summary Judgment on Counts I, II, and IV (ECF No. 55), and Plaintiffs' Cross-Motion for Partial Summary Judgment on Counts I and II. ECF No. 56.

---

[1] The Second Circuit affirmed this Court's dismissal of Count III of the Complaint. *Kirkendall v. Halliburton, Inc.*, 707 F.3d 173, 182-84 (2d Cir. 2013) ("*Kirkendall II*").

1

For the reasons that follow, Defendants' Motion for Summary Judgment (ECF No. 55) is GRANTED, and Plaintiffs' Cross-Motion for Partial Summary Judgment (ECF No. 56) is DENIED.

## BACKGROUND[2]

On May 1, 1986, Dresser Industries, Inc. ("Dresser") established Defendant Dresser Industries, Inc., Consolidated Salaried Retirement Plan ("DICON" or "the Plan"). The plan was established as a pension plan for Dresser's salaried employees. Plaintiffs were all Dresser employees when DICON was formed and they all enrolled in DICON.

To qualify for early retirement benefits, DICON participants had to satisfy the following requirements detailed in Section 4.02 of the Plan (ECF No. 11-4 at 42):

(1) the Participant's Severance from Service Date ("SSD"), or the date they quit, retired, or were discharged, must occur after they turn 55-years-old but before they reach age 65; and the Participant had to

(2) Participate in DICON on May 1, 1986; and

(3) have 10 years or more of Vesting Service.

Two DICON articles explain how Participants may accrue Vesting Service. Article I, Section 1.51 defines Vesting Service as Continuous Service, with a few exceptions not at issue here. ECF No. 11-4 at at 30. Section 1.13(b), the only relevant subsection, explains that Continuous Service begins on the Participant's Employment Commencement Date ("ECD") or May 1, 1976, whichever is later, and ends on their SSD. *Id.* A Participant's ECD is the date on which the Participant performs an hour of duties for an Employer or Related Entity. *Id.* at 19. A

---

[2] The following undisputed facts are taken from the parties' respective Local Rule 56 Statements. *See* ECF Nos. 54-2, 56-2, 58.

Related Entity is "each…partnership [or] joint venture…in which [Dresser] has, either directly or indirectly, a substantial ownership interest." *Id.* at 26.

Article 12, Section 12.03 contemplates the formation of the Dresser-Rand Company ("DR") and explains how DR employees may accrue Vesting Service. Importantly, Section 12.03 explains that each Participant who transfers employment from Dresser to DR may use "each such former Employee's service with DR commencing on such Employee's first day of employment with DR…as Continuous Service under [DICON] for the purpose of determining Vesting Service (which determines eligibility for retirement benefits)…." ECF No. 11-7 at 24.

On January 1, 1987, Dresser entered into a partnership under New York law with Ingersoll-Rand Company ("Ingersoll") known as DR.

Then, on September 29, 1998, Defendant Halliburton, Inc. ("Halliburton") acquired Dresser. Dresser was thus a wholly-owned subsidiary of Halliburton and remained a partner in DR.

After Halliburton acquired Dresser, Halliburton adopted DICON effective January 1, 1999 and amended it to establish the Halliburton Company Benefits Committee ("HBC") administrator of DICON.

In February 2000, Halliburton, as owner of Dresser, sold Dresser's interest in DR to Ingersoll. Consequently, as of February 2000, Ingersoll owned DR completely.

On February 1, 2000, HBC unanimously ratified a decision to deny DR employees the ability to "grow in" to early retirement benefits under DICON after the sale. HBC subsequently interpreted DICON to define "DR" as the partnership between Dresser and Ingersoll as long as Dresser had an interest in DR. Under that interpretation, once Dresser no longer has an interest in

3

DR, "DR" no longer existed for purposes of DICON and Plaintiffs could not "grow in" to their early retirement benefits after Halliburton sold Dresser's interest in DR to Ingersoll.

Accordingly, HBC deemed that Plaintiffs and similarly-situated DR employees ceased service with DR as of December 30, 1999. Therefore, any DR employees who did not meet the requirements for early retirement benefits as of December 30, 1999, could not "grow in" to early retirement benefits even though their employment with DR continued under Ingersoll's ownership.

DR's ownership changed three more times: First Reserve Corporation purchased DR from Ingersoll on October 29, 2004; DR became a publicly-owned company in August of 2005; and Siemens AG acquired DR in June 2015.

Plaintiffs filed their Complaint on May 1, 2007. ECF No. 1. Defendants subsequently moved for judgment on the pleadings. ECF No. 13. This Court found that Plaintiffs had failed to exhaust their administrative remedies and dismissed the complaint. *Kirkendall v. Halliburton, Inc.*, No. 07-cv-289-JTC, 2011 WL 2360058 (W.D.N.Y. June 9, 2011). Plaintiffs appealed (ECF No. 29), and the Second Circuit found that Kirkendall was not required to exhaust her administrative remedies and remanded to this Court to determine whether Snyder, Caya, and Seth exhausted their administrative remedies. *Kirkendall II*, 707 F.3d at 181-82. The Second Circuit affirmed this Court's dismissal of Count III, and reinstituted Counts I, II, and IV. *Id.* at 179-84.

**LEGAL STANDARD**

A motion for summary judgment should be granted where the moving party shows that "there is no genuine dispute as to any material fact" and that the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute regarding such a fact is genuine "if the evidence is such that a reasonable

4

jury could return a verdict for the nonmoving party." *Id.* Thus, when presented with a motion for summary judgment, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

It is the movant's burden to establish that no genuine and material factual dispute exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). To that end, the Court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003). That is not to say that the non-moving party bears no burden. Rather, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Indeed, where the non-moving party fails to respond to a motion for summary judgment, "the court may consider as undisputed the facts set forth in the moving party's affidavits." *Gittens v. Garlocks Sealing Techs.*, 19 F. Supp. 2d 104, 109 (W.D.N.Y. 1998).

To be clear, the non-moving party's failure to respond to a motion for summary judgment does not itself justify granting summary judgment. *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001) (noting that, even where the non-moving party "chooses the perilous path of failing to submit a response to a summary judgment motion," the court "may not grant the motion without first examining the moving party's submission to determine if it has met its burden"). The Court must be satisfied that the moving party's assertions are supported by citations to evidence in the record. *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). And the motion may be granted "only if the facts as to which there is no genuine dispute show that the moving party is entitled to judgment as a matter of law." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996) (internal quotation marks omitted).

**DISCUSSION**

Before analyzing the parties' motions, the Court must address two threshold issues: (1) whether Defendants' Statement of Material Facts (ECF No. 54-2) in support of their Motion to Dismiss is undisputed, and (2) whether Plaintiffs Snyder, Caya, and Seth exhausted their administrative remedies. The Court will then address Counts II, IV, and I, respectively.

**1. Statement of Material Facts**

Defendants argue that their Statement of Material Facts (ECF No. 54-2) is undisputed because Plaintiffs failed to file a responding Statement of Material Facts. ECF No. 61 at 2-3. Although Plaintiffs are required to follow Local Rule of Civil Procedure 56(a)(2), the Court does not consider the entirety of Defendants' Statement of Material Facts undisputed. Plaintiffs submitted a Statement of Material Facts (ECF No. 56-2) in support of their Partial Motion for Summary Judgment. To the extent that facts outlined in Plaintiffs' Statement of Material Facts dispute facts in Defendants' Statement of Material Facts, the Court will treat those facts as disputed. *See* Fed. R. Civ. P. 56(e). Notably, Plaintiffs properly supported the facts that they did provide by "citing to particular parts of materials in the record…." Fed. R. Civ. P. 56(c)(1)(A); *see also N.Y. State Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 648-49 (2d Cir. 2005).

**2. Exhaustion of Administrative Remedies**

In *Kirkendall II*, the Second Circuit concluded that "Kirkendall was not required to exhaust her administrative remedies" and left it to this Court on remand to determine "whether the other plaintiffs named in this suit" satisfied the standard set forth in the decision. *Id.* at 181-82. The Second Circuit joined the Seventh and Eleventh Circuits in "holding that plan participants will not

be required to exhaust their administrative remedies where they reasonably interpret the plan terms not to require exhaustion and do not exhaust their administrative remedies as a result." *Id.* at 181.

Based on that standard, the Court finds that Plaintiffs Snyder, Caya, and Seth were not required to exhaust their administrative remedies. In *Kirkendall II*, the Second Circuit noted that Kirkendall had written letters to Halliburton through an attorney seeking the process to contest her benefit determinations. *Id.* at 181. She received no clear answer or none at all. *Id.* The Second Circuit noted that "[i]t is apparent that Kirkendall thought that she had pursued the avenues available to her and reasonably concluded that the only means of vindicating her claim was through a lawsuit." *Id.*

Defendants argue that Snyder, Caya, and Seth made no such inquiries. ECF No. 55 at 17. They did not write letters, seek the assistance of an attorney, or pursue any administrative remedies. *Id.* Plaintiffs' do not deny Defendants' claims, but note that the Second Circuit's standard does not require plan participants to pursue administrative remedies for the sake of the pursuit. *See* ECF No. 60 at 1-5.

The Court agrees with Plaintiffs. Snyder, Caya, and Seth all knew of the process undertaken by Kirkendall, knew of Halliburton's position on denying participants the ability to "grow in" to early retirement benefits, and reasonably concluded that the "only means of vindicating [their] claim[s] was through a lawsuit." *Kirkendall II*, 707 F.3d at 181. Moreover, the Second Circuit was clear that it does not require "plaintiffs to exhaust their administrative remedies where they make a clear and positive showing that pursuing available administrative remedies would be futile…" *Kirkendall II*, 707 F.3d at 179 (quoting *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir.1993)) (internal quotation marks omitted).

7

Based on their knowledge, Snyder, Caya, and Seth reasonably interpreted the plan terms not to require exhaustion and did not exhaust their administrative remedies as a result. Accordingly, they were not required to exhaust their administrative remedies.

**3.     Count II – Benefit Claim**

   **a. Standard of Review**

"ERISA does not itself prescribe the standard of review by district courts for challenges to benefit eligibility determinations." *Novella v. Westchester Cnty.*, 661 F.3d 128, 140 (2d Cir. 2011) (quoting *Celardo v. GNY Auto. Dealers Health & Welfare Trust*, 318 F.3d 142, 145 (2d Cir. 2003)) (internal brackets omitted). "The Supreme Court has instructed that 'plans investing the administrator with broad discretionary authority to determine eligibility are reviewed under the arbitrary and capricious standard.'" *Id.* "Otherwise, courts review plan administrators' determinations *de novo*." *Id.* (citing *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 763 (2d Cir. 2002)).

"The plan administrator bears the burden of proving that the deferential standard of review applies." *Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir. 2002) (citing *Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 249 (2d Cir. 1999)). "Although express use of the terms 'deference' and 'discretion' in the plan is not necessary to avoid a *de novo* standard of review, this Court will construe ambiguities in the plan's language against" the plan administrator. *Id.*

The arbitrary and capricious standard of review is proper where the plan administrator has the power to "interpret" plan provisions, *see Jordan v. Ret. Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1270-71 (2d Cir. 1995), and "resolve all dispute and ambiguities." *Nichols v.*

8

*Prudential Ins. Co. of America*, 406 F.3d 98, 108 (2d Cir. 2005) (quoting *Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 251 (2d Cir. 1999)).

Here, Defendants have proven that the arbitrary and capricious standard of review applies. In their Motion for Summary Judgment, Defendants note that DICON "states that the plan administrator's powers include the 'interpretation, construction, and reconciliation' of plan provisions and 'resolution of all questions that may arise hereunder.'" ECF No. 55 at 21; ECF 11-5 at 24. Plaintiffs argue that DICON does not give Defendants discretion to interpret ambiguous plan provisions and that any interpretation of DICON provisions by Defendants was a business decision and not an interpretation.

Plaintiffs' arguments are unavailing. While DICON does not explicitly grant Defendants the discretion to interpret ambiguous plan provisions, granting Defendants the ability to "interpret" plan provisions and "resolve" all questions that arise under the plan definitively entitles Defendants' interpretations to arbitrary and capricious review based on the precedent of this Circuit. Moreover, whether Defendants' interpretations were a business decision is irrelevant to determining the Court's standard of review. Accordingly, Defendants have proven that the arbitrary and capricious standard of review applies.

### b. Plan Interpretation

"ERISA plans are construed according to federal common law." *Fay*, 287 F.3d at 103 (citing *Masella v. Blue Cross & Blue Shield of Conn., Inc.*, 936 F.2d 98, 107 (2d Cir. 1991)). The Court "will review the Plan as a whole, giving terms their plain meanings." *Id.* (citing *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 148 (2d Cir. 1993)). It is a "cardinal principle of contract construction that a document should be read to give effect to all its provisions and to render them

consistent with each other." *Perreca v. Gluck*, 295 F.3d 215, 224 (2d Cir. 2002) (quoting *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995)).

The Court will overturn an interpretation under arbitrary and capricious review only if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Fay*, 287 F.3d at 104 (citing *Kinstler*, 181 F.3d at 249) (internal quotation marks omitted). "Where both the [plan administrator] of [an ERISA plan] and a rejected applicant offer rational, though conflicting, interpretations of plan provisions, the [plan administrator's] interpretation must be allowed to control." *Novella*, 661 F.3d at 140 (quoting *Miles v. N.Y. State Teamsters Conference Pension & Ret. Fund Emp. Pension Benefit Plan*, 698 F.2d 593, 601 (2d Cir. 1983)). However, "where the trustees of a plan impose a standard not required by the plan's provisions, or interpret the plan in a manner inconsistent with its plain words, or by their interpretation render some provisions of the plan superfluous, their actions may well be found to be arbitrary and capricious." *Miles*, 698 F.2d at 599.

Here, both Defendants and Plaintiffs offer rational, conflicting interpretations of the DICON provisions, and so Defendants' interpretation must control. Plaintiffs' benefit claim hinges on whether Defendants correctly interpreted DICON to disallow Plaintiffs to "grow in" to their early retirement benefits after Halliburton sold Dresser's interest in DR to Ingersoll in 1999. Under Plaintiffs' interpretation, DICON declared DR to be a partnership under New York law. Under New York law, a partnership "continues until the winding up of partnership affairs is completed." N.Y. Partnership Law § 61. Thus, until DR completed the winding up of its affairs, DR continued and its employees participating in DICON were able to "grow in" to their early retirement benefits.

Defendants' interpretation of DICON is also rational because DICON supports Defendants' interpretation. Participants in DICON may "grow in" to early retirement rights by accruing Vesting Service. ECF. No. 11-7 at 24. One manner in which DICON participants may accumulate Vesting Service is by working for a "Related Entity." ECF No. 11-7 at 24; ECF No. 11-4 at 15, 19, 26, 30. A "Related Entity" is "each…partnership [or] joint venture…in which [Dresser] has, either directly or indirectly, a substantial ownership interest." ECF No. 11-4 at 26. Section 12.03, which outlines how DR employees could "grow in" to early retirement benefits, specifically considered the formation of DR as a partnership between Dresser and Ingersoll. ECF No. 11-7 at 24. Thus, reading DICON as a whole, giving effect to all its provisions, reading them consistently with each other, and giving their terms plain meanings, it is rational for Defendants to interpret DR to mean a "partnership [or] joint venture…in which [Dresser] has, either directly or indirectly, a substantial ownership interest." *Id.* Once Halliburton sold Dresser's interest in DR to Ingersoll in 1999, Dresser no longer had a substantial ownership interest, direct or indirect, in DR. Defendants' interpretation is rational, reasonable and supported by substantial evidence. Accordingly, both Defendants and Plaintiffs offer rational, conflicting interpretations of the DICON provisions, and so Defendants' interpretation must control.

### 4. Count IV – Breach of Fiduciary Duty

"In every case charging breach of ERISA fiduciary duty…the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).

Here, Defendant Halliburton is entitled to summary judgment on Plaintiffs' breach of fiduciary duty claim because it is undisputed that Halliburton did not act as a fiduciary when it allegedly caused DICON to determine Plaintiffs' early retirement benefits based on the wrong termination date.

In their Complaint, Plaintiffs allege that Halliburton "breached its fiduciary duties of loyalty and prudence" when it "caus[ed] [DICON] to determine benefits for Plaintiffs and the Class based on the wrong date of termination…." ECF No. 1 at ¶44. In response, Halliburton argues[3] that HBC, not Halliburton, made the determination Plaintiffs allege and that "[t]here is simply no evidence" that Halliburton acted as a fiduciary. ECF No. 55 at 34. Plaintiffs argue that the HBC merely "ratified" a decision made by an unspecified person, most likely Halliburton, and that Halliburton breached its fiduciary duty by communicating misrepresentations to Plaintiffs "through its Human Relations employees." ECF No. 60 at 16. Significantly, Plaintiffs neglect to provide any record citations for their factual assertions.

The Court agrees with Halliburton for two reasons. First, Plaintiffs did not meet their burden under Fed. R. Civ. P. 56. They provided no specific facts or evidence "showing that there is a genuine issue for trial" that would prevent Halliburton from being entitled to summary judgment. *See* Fed. R. Civ. P. 56(e); *see also Liberty Lobby, Inc.*, 477 U.S. at 248. Plaintiffs dispute that HBC made the determination only insofar as they speculate HBC merely ratified Halliburton's decision. Without further evidence allowing the Court to make a reasonable inference in Plaintiffs' favor, Halliburton has shown that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.

---

[3] Halliburton advances other arguments in support of its motion for summary judgment as to Count IV. ECF No. 55 at 27-29. The Court declines to address those arguments, however, because Halliburton is entitled to summary judgment since it did not act as a fiduciary.

Second, Plaintiffs' Complaint contends that Halliburton breached its fiduciary duties of loyalty and prudence by "causing [DICON] to determine benefits for Plaintiffs and the Class based on the wrong date of termination…." ECF No. 1 at ¶44. The Complaint does *not* allege that "Halliburton, through its Human Relations employees…communicated…misrepresentations to the participants[,]" breaching its fiduciary duty. ECF No. 60 at 16. This Court has previously held that "a plaintiff may not use a memorandum of law or similar paper to assert a claim that is not contained in the complaint." *Ribis v. Mike Barnard Chevrolet-Cadillac, Inc.*, 468 F. Supp. 2d 489, 495 (W.D.N.Y. 2007). Consequently, Plaintiffs' arguments fail and Halliburton is entitled to summary judgment as to Count IV.

**5.     Count I – Declaratory Judgment**

Finally, Defendants are entitled to summary judgment on Plaintiffs' declaratory judgment claim. Plaintiffs' claim seeks a declaratory judgment finding that DR existed past the sale to Ingersoll and thus Plaintiffs are able to "grow in" to early retirement benefits. ECF No. 1 at 7. In other words, Plaintiffs seek monetary damages couched in an equitable claim. *See Central States, Southeast & Southwest Areas Health & Welfare Fund v. Gerber Life Ins. Co.*, 771 F.3d 150, 154 (2d Cir. 2014). This type of claim attempts to work around "ERISA's express remedies" and should be dismissed. *See id.* Accordingly, Defendants are entitled to summary judgment on Plaintiffs' declaratory judgment claim.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (ECF No. 55) is GRANTED, and Plaintiffs' Cross-Motion for Partial Summary Judgment (ECF No. 56) is DENIED.  The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: September 29, 2017
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court