**MANDATE**

**MANDATE ISSUED ON 03/25/2019**

17-3487-cv
*Kirkendall v. Halliburton, Inc.*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of January, two thousand nineteen.

PRESENT: PETER W. HALL,
GERARD E. LYNCH,
*Circuit Judges*,
VICTOR A. BOLDEN,
*District Judge.*\*

---

KATHY JOY KIRKENDALL, WESLEY SNYDER, BARBARA CAYA, AND BONNIE SETH, ON BEHALF OF THEMSELVES AND OTHERS SIMILARLY SITUATED,

*Plaintiffs-Appellants*,

v.  No. 17-3487-cv

HALLIBURTON, INC., HALLIBURTON RETIREMENT PLAN, AND DRESSER INDUSTRIES, CONSOLIDATED RETIREMENT PLAN,

*Defendants-Appellees.*

---

FOR APPELLANTS:                      DAVID B. RODES, Goldberg, Persky & White P.C., Pittsburgh, PA.

---

\* Judge Victor A. Bolden, of the United States District Court for the District of Connecticut, sitting by designation.

1

FOR APPELLEE:  SHAY DVORETZKY, Jones Day, Washington, D.C., James S. Urban (*on the brief*), Jones Day, Pittsburgh, PA, Parker Rider-Longmaid (*on the brief*), Jones Day, Washington, D.C.

Appeal from a judgment of the United States District Court for the Western District of New York (Geraci, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **AFFIRMED.**

In this Employment Retirement Income Security Act, 29 U.S.C. § 1002 – 1461 ("ERISA"), action, Plaintiffs-Appellants claim, in relevant part, that they were improperly denied early retirement benefits.  We assume the parties' familiarity with the facts, record of prior proceedings, and arguments on appeal, which we reference only as necessary to explain our decision to affirm.

Dresser Industries, Inc. ("Dresser") established the Dresser Industries, Inc., Consolidated Salaried Retirement Plan ("Plan") on May 1, 1986.  On January 1, 1987, Dresser entered a partnership established under New York law with Ingersoll-Rand Company ("Ingersoll"). The partnership was known as the Dresser-Rand Company ("DR").

On September 29, 1998, Appellee Halliburton, Inc. ("Halliburton") acquired Dresser. Dresser then became a wholly-owned subsidiary of Halliburton and continued as a partner in DR.  In February of 2000, Halliburton sold Dresser's interest in DR to Ingersoll, making Ingersoll the sole owner of DR.

Halliburton adopted the Plan when it bought Dresser and, effective January 1, 1999, amended it to establish the Halliburton Benefits Committee ("HBC" or "Committee") as the Plan administrator.  On February 1, 2000, the HBC made the decision that, for purposes of

2

the Plan, DR no longer existed once Dresser's interests were sold to Ingersoll, such that Appellants, and those similarly situated, could not continue to "grow in" to early retirement eligibility. Appellants were all employees of Dresser who transferred to DR and were Plan Participants. Appellants were not yet 55 at the time Ingersoll purchased Dresser's interest in DR. Appellant Bonnie Smith was laid off by DR on May 31, 2003, at the age of 55 years and 2 months. Appellants Kathy Joy Kirkendall retired from DR around February 1, 2006 at the age of 55 years and 2 months. Appellant Barbara Caya was terminated from DR on October 12, 2005 at the age of 57 years and 2 months.

Under Section 4.02 of the Plan, participants therein ("Participants") were eligible for early retirement benefits if:

(1) the Participant's Severance from Service Date ("SSD"), or the date they quit, retired, or were discharged, occurred after they turned 55-years-old but before they reached the age of 65; and the Participant had to

(2) Participate in the Plan as of May 1, 1986; and

(3) have 10 years or more of Vesting Service.

Article 12 of the Plan contemplates "Joint Ventures, Sales and Spinoffs." J. App'x 454. Section 12.03 of the Plan addresses "Dresser-Rand Company" and provides for the "benefits payable from the Plan" for employees of Dresser who became employees of DR "pursuant to the Organizational Agreement between [Dresser] and Ingersoll[] which established the Dresser-Rand Company effective January 1, 1987. DR is a general partnership organized under the laws of the State of New York." J. App'x 457–58. Section 12.03 states that each such employee's "service with DR commencing on such Employee's first day of employment

3

with DR shall be counted as Continuous Service under this Plan for the purpose of determining Vesting Service (which determines eligibility for retirement benefits) and eligibility for Plan participation and no participant shall be eligible to commence benefits under this Plan until such participant terminates employment with DR, or any successor thereof." J. App'x 458.[1]

Section 6.03 of the Plan states that "[t]he Committee shall have the sole duty and power to direct administration of the Plan, including the interpretation, construction and reconciliation of its provision[s], [and] the resolution of all questions that may arise hereunder . . . and any action taken in good faith shall be binding upon all persons." J. App'x 383.

"[W]e review the trial court's summary judgment decision *de novo,* construing all evidence in the light most favorable to the nonmoving party." *Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013) (internal quotation marks omitted). ERISA does not provide a standard of review to be used by district courts in reviewing "benefit eligibility determinations." *Novella v. Westchester Cty.*, 661 F.3d 128, 140 (2d Cir. 2011) (quoting *Celardo v. GNY Auto. Dealers Health & Welfare Trust*, 318 F.3d 142, 145 (2d Cir. 2003)). ERISA "abounds with the language and terminology of trust law," *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989), and, in accordance with instructions from the Supreme Court, we apply the arbitrary and capricious

---

[1] Two articles in the Plan explain how Participants may accrue Vesting Service. Vesting Service is defined by Section 1.51 as "Continuous Service," with exceptions not at issue here. Section 1.13(b) defines "Continuous Service," as applicable to Appellants, as "continuous, uninterrupted time as an employee . . . with [Dresser] or any Related Entity," from the Participants' Employment Commencement Date or May 1, 1976, whichever is later, and ends on their SSD. J. App'x 327. A "Related Entity," under Section 1.44, is "each domestic or foreign corporation, partnership, joint venture or other business organization, other than [Dresser], in which [Dresser] has, either directly or indirectly, a substantial ownership interest." J. App'x 338.

4

standard of review to "plans investing the administrator with broad discretionary authority to determine eligibility," *Novella*, 661 F.3d at 140 (quoting *Celardo*, 318 F.3d at 142). If a plan does not endow an administrator with broad discretionary authority, we apply a *de novo* standard of review. *Id.*

The plan administrator here has carried its "burden of proving that the deferential standard of review applies." *Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir. 2002); *see* J. App'x 383 (Plan Section 6.03 reserves to the Committee the broad power to interpret and construct the Plan and resolve "all questions that may arise hereunder"); *see also Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 622 (2d Cir. 2008) (applying the arbitrary and capricious standard where the plan states the administrator "may adopt reasonable policies, procedures, rules, and interpretations to promote the orderly and efficient administration" of the plan); *Jordan v. Ret. Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1271 (2d Cir. 1995) (applying the arbitrary and capricious standard of review where the plan stated the committee "shall pass upon all questions concerning the application or interpretation of the provisions of the Plan"); *O'Shea First v. Manhattan Co. Thrift Plan & Trust*, 55 F.3d 109, 112 (2d Cir. 1995) (applying the arbitrary and capricious standard of review where the plan stated "[t]he Trustees shall determine any questions arising in the administration, interpretation, and application of the Plan"). Unlike those decisions reviewed in the out-of-Circuit cases to which Appellees point, where there was no evidence the Plan had been construed by the administrator in making the relevant decision, *see Moench v. Robertson*, 62 F.3d 553, 567–68 (3d Cir. 1995); *Thompson v. J.C. Penney Co.*, No. 00-3504, 2001 WL 1301751, at *3–4 (6th Cir. Aug. 7, 2001), the Committee, in making its decision, did consider the Plan itself. *See* J. App'x 687 (the HBC unanimously approved the "proposed

5

[] ratification by the Committee to deny 'grow in' rights for early retirement benefits under the [Plan], for employees of [DR] following the sale of Halliburton Company's interest in [DR].").

Under arbitrary and capricious review, a court will only overturn an administrator's determination where it is "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Fay*, 287 F.3d at 104 (citing *Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 251 (2d Cir. 1999)). Where both the interpretation proffered by the administrator and the interpretation proffered by the claimant are reasonable, the administrator's interpretation will not be disturbed. *Novella*, 661 F.3d at 140. The court is to "review the Plan as a whole, giving terms their plain meanings." *Fay*, 287 F.3d at 104. Courts "apply a federal common law of contract [to ERISA-interpretation], informed both by general principles of contract law and by ERISA's purposes as manifested in its specific provisions." *Feifer v. Prudential Ins. Co. of Am.*, 306 F.3d 1202, 1210 (2d Cir. 2002).

The interpretation of the Plan advanced by Appellees is not without reason, unsupported by substantial evidence or erroneous as a matter of law. According to evidence before the district court, the HBC interprets "DR" as used in Section 12.03 to mean "the joint venture between Dresser and Ingersoll[] that was known as the Dresser-Rand Company . . . and once Dresser no longer had an ownership interest, the 'DR' referenced in this provision no longer existed." J. App'x 173. In other words, according to the HBC, the entity "DR", as used in Section 12.03, "ceased to exist on February 28, 2000, when a wholly owned subsidiary of Ingersoll[] acquired Dresser's interest in the joint venture." *Id.* "Accordingly, after the sale, the HBC deemed Plaintiffs and similarly situated Dresser-Rand Company employees to be employed by a successor and to have ceased to have 'service with DR,' which meant that they

6

ceased to accrue vesting service under the . . . Plan." J. App'x 174. In support of this interpretation, the HBC argues that the words "or a successor" at the end of Article 12.03 would be mere surplusage if the term "DR" were to include successors. The HBC also points out that "DR" is "referred to as a specific partnership involving both Dresser and Ingersoll[]" in the first paragraph of Section 12.03.

There are other reasonable interpretations of the Plan, including that advanced by Appellants. This panel indeed finds the interpretation of the Plan advanced by Appellants to be *more* reasonable. But in such cases, under the standard of review we must apply, the administrator's interpretation will not be disturbed by the courts. *Celardo*, 318 F.3d at 146.

Appellants argue that because Halliburton both administers and funds the Plan, the outcome should be different. But such a categorical potential conflict of interest will not be given weight where the claimant has failed to demonstrate that the conflict affected the administrator's decision making. *See Durakovic v. Bldg. Serv. 32 BJ Pension Fund*, 609 F.3d 133, 140 (2d Cir. 2010) (explaining that "[n]o weight is given to a conflict in the absence of any evidence that the conflict actually affected the administrator's decision.") (citing *Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 83 (2d Cir. 2009)); *cf. Roganti v. Metro. Life Ins. Co.*, 786 F.3d 201, 218 (2d Cir. 2015) (stating that the burden was on the claimant to identify evidence that the committee's categorical conflict of interest "actually affected the administrator's decision.") (internal quotation marks omitted).

We have considered all Appellants' arguments and conclude that they are without merit. Accordingly, we **AFFIRM** the judgment of the district court.

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court